# ORIGINAL

(Del. Rev.12/98)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CLIFFORD W DORSEY. JR

_____

(Name of Plaintiff or Plaintiffs)

v.

**CIVIL ACTION No.** _10 - 642_

BARCLAYS BANK (US)

_____

(Name of Defendant or Defendants)

## *COMPLAINT UNDER TITLE VII*

## *OF THE CIVIL RIGHTS ACT OF 1964*

1.      This action is brought pursuant to *Title VII of the Civil Rights Act of 1964*, as amended,
**employment discrimination**. Jurisdiction exists by virtue of 42 U.S.C. $\S$2000e-5. Equitable and other relief are also

sought under 42 U.S.C. $\S$2000e-5(g).

2.      Plaintiff resides at ___1248 PROSPECT DRIVE___
                                            (Street Address)
WILMINGTON   NEW CASTLE   DELAWARE   19809
(City)         (County)        (State)       (Zip Code)
(302) 510-4896
(Area Code) (Phone Number)

3.      Defendant resides at, or its business is located at ___125 S WEST STREET___
                                                                        (Street Address)
WILMINGTON   NEW CASTLE   DELAWARE   19801
(City)         (County)        (State)       (Zip Code)

4.      The discriminatory conduct occurred in connection with plaintiff's employment at, or application to
be employed at, defendant's ___BARCLAYS BANK___ place of bussiness
                                      (Defendant's Name)
located at ___125 S WEST STREET___
              (Street Address)
WILMINGTON   NEW CASTLE   DELAWARE   19801
(City)         (County)        (State)       (Zip Code)

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2010 JUL 30   PM 12:11

5.    The alleged discriminatory acts occurred on _____ , __9__ , __2008__ − 3/12/2009
                                                          (Day)        (Month)      (Year)

6.    The alleged discriminatory practice    ☑ is    ⭕ is not continuing.

7.    Plaintiff filed charges with the Department of Labor of the State of Delaware,

INDUSTRIAL AFFAIRS    4625   NORTH MARKET STREET, WILMINGTON
(Agency)              (Street Address)        (City)

NEW CASTLE      DELAWARE       19802                                      , regarding
(County)        (State)        (Zip Code)

defendant's alleged discriminatory conduct on ___12TH___ , ___MARCH___ , ___2009___ .
                                                 (Day)        (Month)       (Year)

8.    Plaintiff filed charges with the Equal Employment opportunity Commission of the United States
regarding defendant's alleged discriminatory conduct on: ___5TH___ , ___MAY___ , ___2008___ .
                                                            (Day)       (Month)       (Year)

9.    The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue letter
which was received by plaintiff on: ___3RD___ , ___MAY___ , ___2010___ .
                                       (Day)       (Month)       (Year)

## *(NOTE:   ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)*

10.    The alleged discriminatory acts, in this suit, concern:

       A.    ⭕ Failure to employ plaintiff.

       B.    ☑ Termination of plaintiff's employment.

       C.    ⭕ Failure to promote plaintiff.

       D.    ☑ Other acts (please specify below)

PLEASE SEE ATTACHED ; ALONG WITH RIGHT TO SUE LETTER
_____

_____

_____

_____

_____

_____

11.    Defendant's conduct is discriminatory with respect to the following:

    A.    **O**    Plaintiff's race

    B.    **O**    Plaintiff's color

    C.    **O**    Plaintiff's sex

    D.    **O** Plaintiff's religion

    E.    **O**    Plaintiff's national origin

    F.    **O** *PLAINTIFFS DISABILITIES*

12.    A copy of the charges filed with the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim.

13.    If relief is not granted, plaintiffs will be irreparably denied rights secured by Title VII of the 1964 CivilRights Act, as amended.

14.    Plaintiff's has no adequate remedy at law to redress the wrongs described above.

### *THEREFORE*, Plaintiff prays as follows: (Check appropriate letter(s))

    A.    **O** That all fees, cost or security attendant to this litigation be hereby waived.

    B.    **O**    That the Court appoint legal counsel.

    C.    **O** That the Court grant such relief as may be appropriate, including injunctive orders, damages, cost and attorney's fees.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: _7/29/2010_

_(Signature of Plaintiff)_

_____

(Signature of additional Plaintiff)

EEOC Form 161 (11/09)    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Clifford W. Dorsey, Jr.**
     **310 Shipley Rd, Apt. 109**
     **Wilmington, DE 19809**

From:  **Philadelphia District Office**
       **801 Market Street**
       **Suite 1300**
       **Philadelphia, PA 19107**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2009-30078 | **Legal Unit** | **(215) 440-2828** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**Daniel Cabot,**
**Acting District Director**

4/30/10

(Date Mailed)

cc:  **Steven S. Greene, Esq., Attorney for Respondent**
     **(Barclaycard, U.S.)**

Enclosure with EEOC
Form 161 (11/09)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS --** **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market Street, Suite 1300
Philadelphia, PA 19107-3127
Philadelphia Direct Dial: (215) 440-2602
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604

Our Reference: Charge Number 846-2009-30078
Clifford W. Dorsey, Jr. v. Barclaycard, U.S.

Clifford W. Dorsey, Jr.
115 West 29ᵗʰ Street
Wilmington, DE 19802

Dear Mr. Dorsey:

When you initially filed your above-referenced charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") we sent the Respondent a Notice of Charge of Discrimination and a signed copy of your charge. At the time that your charge was served we requested information from the Respondent, including a statement of position with respect to the allegations addressed in the charge. We also offered the Respondent the opportunity to settle the charge with the help of the Commission. However, to date the Respondent has not indicated an interest in attempting to settle the charge or, if the Respondent has done so, the matter has not been resolved by a settlement agreement between the parties.

Your charge has been assigned to Investigator William Busund for processing. You should contact him directly at (215) 440-2663. I am at this time sending you a copy of the Respondent's position statement for your review. Sending that response to you does not necessarily indicate that the EEOC concurs with the Respondent's position, but merely that we seek your input before making our decision in that matter. Therefore, please review the position statement enclosed with this letter and submit your rebuttal response **in writing directly to Mr. Busund within 15 days** of the date of this letter. That is, please inform us why in your opinion the position statement is not accurate or not complete and why the EEOC should therefore continue with its investigation. If you have additional relevant facts or witnesses to support your allegations, please provide this information as part of your response. Please note that any documents which may be referenced in the response to the charge are not included. Copies of company documents provided by Respondent as evidence cannot be disclosed to a Charging Party until after the charge has been closed by EEOC. By the same token, copies of any documents provided questionnaires provided by a Charging Party to the EEOC as evidence have not been provided to Respondent except the copy of the signed charge.

Even though there has not been any settlement to date, the settlement of charges is always an option if both sides to the charge are agreeable to doing so. In that regard, please include in your response the specific terms of relief that you are willing·to accept to resolve your charge. If you seek monetary relief, please provide a full explanation of the purpose/basis for the monetary relief requested.

If we do not hear from you, if you do not submit any new evidence, or the evidence submitted by you cannot refute the Respondent's position statement and documentation, a recommendation for dismissal may be made without further investigation or contact with you. In that event, you will be issued a "Dismissal and Notice of Rights" which would enable you to file suit in U.S. District Court within 90 days of your receipt of that Notice.

Please address your response or any other additional information to Mr. Busund at the address shown in the letterhead above. Again, if you have any questions, please contact Mr. Busund directly at (215) 440-2663.

Sincerely,

March 24, 2010
Date

Frances Watson
Frances Watson
Supervisory Investigator

Enclosure: Respondent position statement

# HELMS & GREENE, LLC

Atlanta • Columbia • Dallas • Houston • San Antonio • Tampa • Tulsa

Steven S. Greene, Esq.
Managing Member

5 Concourse Parkway, Suite 2575
Atlanta, Georgia 30328
(770) 206-3371
Fax (770) 206-3381
sgreene@helmsgreene.com
www.helmsgreene.com

December 18, 2009

Ms. Frances Watson
Supervisory Investigator
Equal Employment Opportunity Commission
Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, Pennsylvania 19107

Re:  EEOC Charge No.: 846-2009-30078
     Clifford W. Dorsey, Jr. and Barclaycard, U.S.

Dear Ms. Watson:

As outside employment counsel for Barclaycard U.S., the above-referenced Charge of Discrimination was forwarded to our attention for investigation and evaluation. We found the religion and disability charge to be totally without merit. Therefore, this letter, including its attachments, serves as the Respondent's Statement of Position.

Mr. Dorsey was employed by Barclaycard U.S. as a Relationship Manager. In that role, he was responsible for carrying out critical customer service activities for the Bank's credit card customers. Relationship Managers are also expected to encourage customers to purchase other Barclay's products and services, true cross-selling efforts. While the volume of "cross sell sales" is important to the Company, it is absolutely critical that offers are communicated to cardholders honestly and completely. The Bank cannot and does not tolerate any misrepresentations or distortions to its customers. Relationship Managers are instructed to read a disclosure verbatim to the customer and to make sure that the customer clearly consents to the new product and charges. By not following these procedures, a Relationship Manager falsifies his or her sales records and puts the Bank at risk given the lack of the customer authorization.

To ensure proper customer service and employee compliance, Relationship Manager customer contacts are routinely audited by the organization. During an audit in February 2009, Barclay's examined 20 conversations between Charging Party and a Barclay's customers where Mr. Dorsey reported that the customer agreed to purchase an "account protector" service. Of those 20 calls, 16 were found to be invalid. The Charging Party enrolled Barclay cardholders into the program without the cardholders' clear positive acceptance. In doing so, the Charging Party failed to follow the Company's clear directives in terms of reading a disclosure verbatim to the customer ensuring a clear positive response from that customer. By engaging this behavior,

Ms. Frances Watson
December 18, 2009
Page 2 of 2

the Charging Party falsified his sales efforts and deliberately misrepresented information to
Barclay customers.

This behavior resulted in the decision to terminate Charging Party.   He had been
employed as a Relationship Manager since July 9, 2007, understood the Bank's expectations, and
deliberately engaged in misconduct.

Attached as Exhibit A is the counseling document reflecting this discharge decision.

Unfortunately, other employees have been found to have engaged in similar
manipulation.  For example, attached as Exhibit B are counseling documents regarding Jackie
Robinson, Chris Powell, Twanda Pearsall, Chris Ebinger, Cyrus Alexander and Kevin Diduch.
These individuals were all discharged by Barclaycard over the past year for similar
misrepresentations. Given the seriousness of this misconduct, Barclaycard has no alternative but
to terminate individuals who deliberately put card member relationships at risk..

The Bank is not aware whether Charging Party has or does not have a disability, within
the meaning of the Americans with Disabilities Act.  Barclay's is aware that Charging Party left
work in December 2008 due to a medical condition.  The Charging Party's medical condition
and any possible disability, played no role in the decision to terminate his employment
relationship with the Bank.  As Mr. Dorsey knows, he violated Bank practices and he falsified
sales reports.  That behavior and only that behavior led to the discharge decision.  Stated another
way, even if the Charging Party had not left work nearly a year ago, he still would have been
discharged for his deliberate misconduct.

Similarly, Charging Party may or may not be a Jehovah Witness.  Regardless of his
religious faith, he deliberately violated Barclaycard procedures and deliberately misrepresented
his work performance.  That is the reason he was discharged, and not some religious affiliation.

For the reasons outlined in this letter, and as further demonstrated by the attachments, we
request that your office issue a no cause determination in this matter.  If additional information
would be helpful from the Bank, please feel free to contact us.

Very truly yours,

Steven S. Greene

SSG/smg
Enclosures

| **State of Delaware**<br>**Department of Labor**<br>**Division of Unemployment Insurance** | | | **Notice of**<br>**Determination**<br>**UC-409** |
|---|---|---|---|
| **Claimant** CLIFFORD W. DORSEY JR. | **SS Number:** | :675 | Delivered by Mail |
| **Address** APT 109 | **Local Office:** 1 | | **Redet:** No |
| 310 SHIPLEY RD | **Fund Code:** 10 | | **Count:** Yes |
| WILMINGTON DE 19809 | **Claim Date:** 04/19/2009 | | |
| | **Date of AC:** | | |
| | **Case Number:** 10093258 | | |

### Findings of Fact:

The claimant filed for benefits effective April 19, 2009. He began working for Barclay Bank on July 9, 2007. His last day of work was on March 10, 2009. At the time of filing the claimant listed the reason for separation as a termination.

The employer has submitted information to the department indicating that the claimant was terminated due to attendance. They testified that he had multiple occurrences of absenteeism and lateness. The claimant had been given a final warning on 2/24/09 indicating that an additional occurrence may result in separation on employment.

In a discharge situation, the employer must prove just cause for discharge. Just cause for discharge is defined as misconduct in connection with the work and must be established by the employer. Although we do not question the employer's administrative decision to discharge the claimant, the employer has not proven that there was misconduct to disqualify the claimant from benefits. The

**Continued on Page 2**

### Title 19 of Delaware Code 3314(2)

An individual shall be disqualified for benefits: For the week in which he was discharged from his work for just cause in connection with his work and for each week thereafter until he has been employed in each of 4 subsequent weeks (whether or not consecutive) and has earned wages in covered employment equal to not less than 4 times the weekly benefit amount.

### Determination:

You were discharged by your employer without just cause in connection with the work. Therefore, you are not disqualified from receiving unemployment insurance benefits pursuant to Section 3314(2), Title 19, Delaware Code and will be eligible to receive benefits for each week of unemployment insurance benefits claimed for which the division determines you meet the eligibility requirements of Section 3315, Title 19, Delaware Code. The division shall issue a determination for any week(s) of unemployment insurance benefits claimed for which you are subsequently deemed ineligible to receive benefits.

**Claims Deputy Signature:** *McCulle~*                                    **Date:** 05/12/2009

If you disagree with this determination, you should ask the Claims Deputy for an explanation. If you are not satisfied with the explanation, you may file an appeal.

### Claimant and Employer Appeal Rights

This determination becomes final on    05/22/2009    unless a written appeal is filed. Your appeal must be received or postmarked on or before the date indicated. If the last date to file an appeal falls on a Saturday, Sunday or Legal Holiday, the appeal will be acceptable the next business day.

If you file an appeal and are still unemployed, you must continue to file weekly claim pay authorization forms with the local office,as instructed, until you receive a final decision.

| **Employer**<br>**Name and**<br>**Address** | BARCLAY BANK<br>100 S. WEST ST | Your assessment employer account will be charged in this case. |
|---|---|---|

WILMINGTON DE 19801

| **State of Delaware** | | | | **Notice of** |
| **Department of Labor** | | | | **Determination** |
| **Division of Unemployment Insurance** | | | | **UC-409** |

**Page 2**

| **Claimant** | CLIFFORD W. DORSEY JR. | **SS Number:** | -2675 | Delivered by Mail |
| **Address** | APT 109 | **Local Office:** 1 | | **Redet:** No |
| | 310 SHIPLEY RD | **Fund Code:** 10 | | **Count:** Yes |
| | WILMINGTON DE 19809 | **Claim Date:** 04/19/2009 | | |
| | | **Date of AC:** | | |
| | | **Case Number:** 10093258 | | |

**Findings:**
claimant is entitled to benefits.

**Christiana Care Family Medicine Center**
1401 Foulk Road
 Wilmington, DE 19803-2727
302-477-3300  Fax: 302-477-3311


February  8, 2008

CLIFFORD DORSEY
310 SHIPLEY ROAD
APT 109
WILMINGTON, DE  19809


To whom it may concern,

Clifford Dorsey is a patient of mine.  He is currently treated with Hydrochlorothiazide (along with other
medications) for his high blood pressure.  This medication is a diuretic and as such it causes him to
produce more urine and need to urinate more frequently.  Please be advised that this is an expected effect
of the medication and make appropriate considerations for Mr. Dorsey.  Mr. Dorsey has authorized me to
release this medical information to you however all other medical information is confidential at this point.

If there are any questions please feel free to call me at (302) 477-3300.  Thank you.


Sincerely,


Thomas G. Sargent DO

**Mr. William Busund**
**Case Investigator**
**Equal Employment Opportunity Commission**
**Philadelphia District Office**
**801 Market Street**

Dear Mr. Busund,

I would like to respond to the Statement of Position, of Barclaycard US Bank. I will respond in the order of their deceptive allegations. Let me first state that I personally feel that Barclays is very hypocritical. In the response that I received, their counsel states that, " The Bank cannot, and does not tolerate any misrepresentations or distortions to its customers ". In their own disclosure, which by the way, I read in full to every customer, states that the customer **"would not be charged "** until we sent them the information regarding Account Protector Plus. Barclays charges them immediately. To a customer that would mean, **they're not going to be charged,** and don't expect to be enrolled to the point of being **locked** into any contract. Which would be correct. As we were trained, by Barclaycard Cross Sell Trainer, Tracy Dukes, she revealed that the customer has 60 days to cancel, and that all of us should utilize the **60 day review period**. As long as we read the disclosure, and at the end of the disclosure, the customer says, " yes ", or "okay ", it is a sale.

At that time, Barclays was pushing all relationship managers to get sales, but when they felt someone was too productive in this area, they just wanted to get rid of them for either personal, or economical cut back reasons. So they would conspire some prearranged way of accomplishing this. If Barclays has in their possession any recordings of myself not reading the disclosure, or any customers not giving a definitive yes or okay, those calls have absolutely been edited, or altered in some way. I welcome EEOC to review these calls, as well as calls they are not specifying, to check the consistency of my presentations. I did them basically the same for 2 years. I asked to hear these calls at the time of termination, and was denied. Rita Oller mentioned that she also heard the calls. So I asked her how I introduced the reading of the disclosure. She could not answer me. Before I ended any cross sell discussion with my customers, I let them know that all calls are recorded, and I had to read a brief disclosure, which alerted them that they were enrolled, asks them if they had any questions, and asks them if it was okay to continue. At this point I received a yes, or okay on **all** calls. The customer also received a letter from Account Protector, letting them know again that they are enrolled, have 60 days to cancel, and any funds charged would be refunded. The Banks relationship with the customer was not put at any risk for lack of customer authorization or dishonesty on my part. My sales statistics were not boosted because of deception, but the utilization of the training that I received from Barclays.

Barclays counsel stated, that the reason I was terminated was for falsification of sales. In the attached document from the State of Delaware Division of Unemployment, Barclays testified that I was terminated for occurrences for absenteeism, and tardiness. Here was an opportunity for Barclays to present the evidence they claimed they had of recordings. I was told by Division of Unemployment they would have to produce these recordings to prevent me from receiving unemployment benefits, which I welcomed, because I know I didn't do any of the things they accused me of. They also were given the opportunity to appeal their decision, that I was eligible for benefits based on the fact that I was discharged without cause in connection to work. I also concluded that at that time there were no such recordings. That is why this so called evidence was never presented.

I agree that Quality Control did audits on our cross sell calls, but I have never been told that I was not compliant in how I did my cross sell calls. I received high grades on my evaluations. Dan Foraker, my manager at the time, would review my calls with me personally, and discuss how we could be more effective. He had enough faith in the quality of my work that he asked me to assist in training the other relationship managers with their cross sell presentations. That had positive results! When I returned to work in February, there was a $1000 bonus for the highest conversion rate of cross sales. There has never been such a incentive while I lead the department for the last year and a half, in cross sell conversion rate. Barclays never figured on me being part of the equation since I just came back from medical leave. But I did win, but there were some managers who preferred I not be compensated, and that acknowledgment, and incentive be paid to someone else. That also motivated the aforementioned audit of my 21 calls in February. So that I would be denied another bonus, denied more fruits of my labor. It is my understanding that discrimination may include, among other things, **limiting or classifying a job applicant or employee in an adverse way**, denying employment opportunities to people who truly qualify, or **not making reasonable accommodations to the known physical or mental limitations of disabled employees**, not advancing employees with disabilities in the business, and/or **not providing needed accommodations in training.** Especially accurate information if the company feels they have been misrepresented by it own training.

It is my firm conclusion that Barclays Managers : Rosa Milbourne, Stephanie Sheuller, Jonathan Taylor, Shelly, Customer Care Head Manager, Heather McGhee, along with Human Resource Manager, Rita Olier and others discriminated against me, and knew what their objective was when I returned to work. To terminate me, not only because of my being vocal about their games; with the continued computer system issues, including my personal log in, so that it would appear I was late, when I was on time, the cursor moving by itself on my computer, filtering a lower percentage of cross sales opportunities than those who had lower conversion rates, so that other favored Relationship Managers like Beatrice Torres,(on Jonathan Taylors team), and others would have the luxury of acclamations in reference to sales, that really belonged to me, sales that Barclays has been paid for, but I have not been paid for, [120 sales in 2008, 16 sales in February 2009, and 24 sales in March 2009], and my insistence on fixing my computer, or I was going to file a grievance because this had been going on daily for over a year. For stating that I was going to file a grievance, Rosa was going to write me up, until I told her I was told by another manager to do so. They didn't correct the issues until the day I was terminated, proving that the issues that limited me all year could have corrected all along.


But also, because I was taken from the job in an ambulance, in which Barclays wanted to avoid any liability. Because of the level of stress these individuals placed on me physically, and mentally, I had to take Nitro Glycerin to relieve frequent chest pressure. December 24, 2008, my wife called in, and spoke a supervisor Flora, who alerted Rosa Milbourne, my immediate supervisor - after Dan Foraker was transferred - that my wife called, and let her know that my blood sugar level had reached 488, and I was diagnosed as a diabetic. I did return to work on the 27th of December. After more computer issues, more games, sales not being recognized, and a conversation with an angry customer, I experienced what I thought was a heart attack, but was actually an anxiety attack. I notified Danielle Arrants a Manager, that I had just taken 2 Nitro Glycerin tablets, if I took another, to call an ambulance please. Barclays required that I have medical clearance before I returned to work. Dr. Antonio Pastore my cardiologist issued a letter informing Barclays that I was not permitted to return to work until further testing. When I was permitted to return, Barclays was provided detailed information of my disabilities; my sleep disorder, and need for sleep studies, further neurological, and cardiac evaluations. Barclays was also informed that I could return, but that I would be required to be excused for frequent testing. Basically, putting them on notice that I am returning, but be mindful that I still had a disability that required my doctors supervision.

The morning of March 10th, 2009, I was advised to quit my job, by my Doctor Thomas Sargent, because of the effect that environment was having on my health. February 8th 2008, at the suggestion of my manager Dan Foraker, I gave him a letter from my doctor informing them of my taking a diuretic, and requested appropriate considerations. During the year 2009 until I was terminated, Rosa Milbourne harassed me every other day about how many times I went to the restroom. She insisted my doctor let Barclays know how often I needed to use the restroom, if I wanted to excused for more than 3 times, and more than 6 minutes in a 10-12 hour period. Taking the medications, while talking on the phones for 10-12 hours, my mouth would get very dry. So I would drink beverages like water, but it would make me want to go to the restroom more. Rosa would use this as a reason to write me up for not being compliant to being in the restroom for no more than 6 minutes. I informed my doctor, and he was furious. He felt the document attached was sufficient.

If not for their actions, I would have been on long term disability to this day. Currently, I have Narcolepsy, Type 2 Diabetes, Insomnia, and Circadian Rhythm Disorder, called (ASPS), Advanced Sleep Phase Syndrome, which has compounded the mental and psychological stress already placed on me by Barclays. As a result, my concentration, memory, and organizational skills have been severely effected. My drivers license has been suspended due to the narcolepsy, thus giving me no choice but, to file for my Social Security Disability Benefits. These conditions were aggravated when I was being trained as a Universal Fraud Agent for the third shift. I told Dan Foraker my doctors emphasizing of the need for me to have a sleep study. He said, after the training, I could take some time off to do that. This span covered 7 weeks without a day off. It was extended 1 1/2 weeks more when Barclays merged with LL Bean for a total of 8 1/2 weeks without a day off. Every employee was requested to work some overtime. January 28th 2010, I had surgery to relieve me of my Sleep Apnea, at Christiana Hospital.

Upon returning to work, February 2009, I met with Heather McGhee to discuss my health, and prospective new schedule. The third shift had been done away with, and Barclays was now strictly daytime hours. I mentioned to Heather, that it was my desire to be transferred to another department, preferably Fraud. She asked if that was something my doctor was requesting. When I told her that I was requesting it, she exclaimed there was nothing available. However she did mention that there were positions available in Collections, because she knew they would be outsourcing those jobs oversees shortly. Which they did. I told her I was not interested. She then let me know if I wanted the 6am -2:30pm shift it was available. When I found out that shift was being supervised by Stephanie Sheuller, I quickly declined. She had a reputation for being condescending, and having the highest rate of terminations among all the managers in Customer Care, and I didn't trust her. Her name was logged into my computer the first day I was having computer issues. After I declined, I was given a 10:30am-7:00pm shift. I wasn't surprised that managerial teams were adjusted, and Rosa Milbourne again was now my manager. She immediately wrote me up for calling out sick in December. She wrote me up for being late, although I was not only on time, but made a sale during the time she claimed I wasn't working. Of course my computer system didn't recognize my sale. Thus, seemingly justifying her writing me up. I didn't want any confrontation with management, so I signed off after she aggressively hounded me to sign against my wishes. I felt there was a definite objective. The Federal Government was coming down on the Banking Industry, so I asked Heather how secure was my employment with Barclays. She stated that, Barclays was secure, because our securities were based in England, they had no need to take any stimulus money other banks abused. She had no idea, I knew she was lying to me. She also didn't know, my mother in law is one of the Vice Presidents for AIG in the Midwest Region. This came to fruition when Barclays was revealed to have taken $400 Billion of stimulus money indirectly from AIG to begin the building the New

Jersey Nets Sports Arena. More than emphasizing their dishonesty. Besides, how many credit card companies have been 100% honest with their customers? They are no more honest with their customers, than they are with their employees.

**Title VII prohibits employers from discriminating against employees and applicants because of their religion when making decisions about hiring, firing, and other terms and conditions of employment.**
**The Act also requires employers to reasonably accommodate the religious practices of an employee or prospective employee, unless to do so would create an undue hardship upon the employer. Flexible scheduling, voluntary substitutions or swaps, job reassignments and lateral transfers are examples of accommodating an employee's religious beliefs. The standard for religious accommodations is "undue hardship." According to the EEOC, "an employer can claim undue hardship when accommodating an employee's religious practices if allowing such practices requires more than ordinary administrative costs." The EEOC goes on to identify some examples of a religious accommodation:**
**Employers cannot schedule examinations or other selection activities in conflict with a current or prospective employee's religious needs, inquire about an applicant's future availability at certain times, maintain a restrictive dress code, or refuse to allow observance of a Sabbath or religious holiday, unless the employer can prove that not doing so would cause an undue hardship.**

In my Original complaint, I never said I was terminated because of my religious beliefs. I stated, that I was denied a day off to attend a religious convention, that I told Dan Foraker I was participating in, and requested off 3 months prior, that was originally approved. The week of the convention Dan informed me that I didn't have those days off, because there was no record off me requesting them. Workforce had changed their original decision, and deleted my request. Because of my computer issues I wasn't able to print the approval, yet I was smart enough to save it to another co-workers computer under my sign in. Do not reveal this to Barclays for they will search for it, delete it, and claim their innocence. I am a Ministerial Servant in the Penny Hill Congregation of Jehovah's Witnesses. There was no reason that this should have happened. This is a situation that deserves to be brought to justice. Other Jehovah's Witnesses that worked in our department were:

**Richard Heck**, - An Elder in the congregation, terminated for lack of production. Legitimate termination.

**Twanda Pearsall** - Also mentioned by Barclays counsel, as being terminated for falsifying sales, is one of Jehovah's Witnesses. Had issues the week after I did to attend her district convention.

**Kendra Crawford** - Is one of Jehovah's Witnesses was terminated from the Human Resources Department, the reason being, because she was pregnant, as a result she was told that she did not represent the image that Barclays wanted to portray.

**Tyleesha Goodson** - Is one of Jehovah's Witnesses, who Rosa Milbourne attempted to terminate under false pretenses. Tyleesha called Rosa a liar, and Human Resources allowed her to take the day off with pay because they had not done their due diligence in trying to get rid of her.

Here are names and telephone numbers of others with insight into these issues:

**Twanda Pearsall - 267-736-7413**
**Marie Baker          - 302-290-4369**
**Tiffany Coverdale - 302-345-7413**
**Michelle Merchado - will have to speak to her at Barclays**
**Kendra Crawford - 302-357-2766**
**Tyleesha Goodson - has moved she will provide her contact information 3 days from**
**today --**           *302 528 1388*

I am no longer able to work because of my health. I have experienced the treachery of those
high-minded enough to try to hide from the consequences of their actions; thinking they are
above the law. All I want is justice, and what is fair. My lost wages, vacation that was denied
through deception, my unpaid sales, compensation for enduring the two counts of discrimination,
defamation of character, and the mental, and physical effects of pain and suffering. I have two
children residing with me. One will be attending Clark University, a 2 year old, and a wife to
support. I would like to settle this out of court for the fair amount of 1.27 million dollars. If it is
not the desire of Barclays to make any type of settlement, I request from the EEOC, the right to
sue in Federal Court for the full compensation deserved for such injustice.

**Thank You,**
**Clifford W Dorsey. Jr**
**1248 Prospect Drive**
**Wilmington, Delaware 19809**
**302-540-4896**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market Street, 13ᵗʰ Fl.
Philadelphia, PA 19107-3127
(215) 440-2600
TTY (215) 440-2610
FAX (215) 440-2632, 2848 & 2604

April 28, 2010

Our Reference:        Charge Number 846-2009-30078   re: Barclays

Mr. Clifford W. Dorsey, Jr.
115 West 29ᵗʰ Street
Wilmington, DE 19802

Dear Mr. Dorsey:

The evidence of record, which includes the evidence and information submitted by you and by Respondent concerning the above-referenced charge, filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII), and the Americans with Disabilities Act of 1990, as amended (ADA), has been reviewed by the Commission. The following is a summary:

*Allegations-* You alleged that in 9/08, you were denied a request to take one day off to attend a religious conference. You alleged that it was first approved, but subsequently you were informed your request was denied. On 3/11/09, you were terminated for alleged falsification of sales. You alleged this was a pretext for Respondent (Barclays) to avoid liability for your disabilities, and that Respondent considered you a threat because you were taken out of work by ambulance in 12/08.

*Evidence Summary-* The record reveals that Respondent routinely audits Relationship Manager customer contacts. The evidence indicates that in 2/09, Respondent examined twenty conversations between you and customers where you reported that the customer agreed to purchase an account protector service. Sixteen of the calls were found to be invalid, in that you enrolled the customers into the program without customer positive acceptance. The record indicates that Relationship Managers are instructed to read a disclosure verbatim to the customer and to obtain a clear, positive response from the customer that she/he consents to the new product and charges. By failing to do this, it is considered falsifying sales efforts and deliberate misrepresentation of information to customers. As a result, you were terminated.

The evidence indicates that six other individuals were terminated for same/similar manipulation.

The record shows that you were taken out of work by ambulance in 12/08. There is no evidence though of any connection between that and your termination for falsification.

In your written rebuttal submitted to the Commission, you indicated that Respondent pushes its Relationship Managers to get sales, but when they felt someone was too productive, they just wanted to get rid of them for either personal or economic cutback reasons. If this were the case, termination based on such reasons does not fall under the Title VII or ADA statute, and the Commission would lack jurisdiction. You also stated that several managers had an objective to terminate you for being vocal about their games, and you indicated matters of wrongdoing. These also would be considered reasons other than religion or disability, and the Commission would not have jurisdiction.

Regarding the day off request, you indicated the day off had been approved, but when you subsequently discussed the day off with your supervisor, you were told that you could not have the day off because there was no record of you having requested it. You indicated at intake that the information given to Respondent could have been deleted.

In order for the Commission to issue a determination that there is reasonable cause to conclude that you were discriminated against because of religion and disability, as alleged in your charge, the evidence would have to support a conclusion that the Respondent took this into account in its actions. The evidence of record does not indicate that there is a likelihood that continued investigation would result in obtaining evidence which would lead to a finding of a violation under the statutes enforced by the Commission.

For these reasons, it is recommended that this matter be concluded, and a Dismissal and Notice of Rights be issued to you, which will allow you to exercise your right to file a private suit in Federal District Court.

Sincerely,

William N. Busund
Investigator

## Counseling Document

 barclaycard

| | Clifford Dorsey | | 3/10/2009 | | Relationship Manag |
|---|---|---|---|---|---|
| | Rosa Milbourne | | Customer CARE/Bank Op | | 7/9/2007 |
| | Date Counseled | | Reason for Counseling | | Type of Counseling |
| | 3/9/2009 | | Conduct | | Termination |
| | | | | | |
| | | | | | |

Barclay's Customer Care center Relationship Managers are the company's primary interface with existing and potential customers and are responsible for ensuring that these customers receive the maximum benefit from Barclay's products and services. Their goal is to educate and assist customers to make it as easy as possible to business with us. Barclay on the whole is consistently striving to build relationships and enhance customer satisfaction. It is expected that we treat every customer in friendly professional manner. Barclay's success is measured by our customers and their opinions of Barclay Relationship Managers are the only connection to our customers and must provide exceptional customer service.

It is also expected that Barclay employees conduct themselves professionally in the workplace. Professionalism is defined by the way we behave in the workplace, and all employees are expected use good judgment and to treat each other with respect. That being understood, Barclay asks that everyone:
Be respectful and courteous to co-workers
Be tolerant of our individual differences
Strive to remain fair, honest and open
Approach the day in a positive manner
Always show your support of Barclay
Be part of the solution
Seek continuous improvement
Refrain from using profane, offensive or abusive language
CODE OF CONDUCT
Colleagues are expected and required to act in good faith and in the best intent of Barclays at all times.
Colleagues shall avoid any actual conflicts of interest and situations that might give rise to the appearance of a
conflict of interest or other impropriety (regardless of whether a conflict of interest or other impropriety actually exists)
Conduct to the contrary, including falsification, manipulation or inappropriate use of company information or property,
will not be tolerated and may result in disciplinary action, up to and including termination of employment.

During an audit of Cross Sell sales for the month of February 2009, it was found that Clifford did not represent Cross Sell offers to cardholders truthfully. Twenty of Clifford's calls were reviewed that he indicated a successful Account Protector sale in the call disposition. Of these 20 calls, 16 were found to be invalid. It was revealed in the call reviews that Clifford did not tell cardholders they were being enrolled while on the call and in some cases told cardholders they would not be enrolled until they responded to the information they received. This is not true, as stated in the Cross Sell Quality Reminders. The Cross Sell disclosure clearly states that the cardholder is being enrolled and is not just getting information to review before enrollment The Cross Sell Quality Reminder states the requirements for a compliant sale. The reminder is shown below:

· It is imperative that you read the disclosure VERBATIM. In order for the sale to be valid, you must ask the customer whether he or she agrees to accept the product and obtain a clear positive response after you've read the entire disclosure. The disclosure and verbal confirmation is REQUIRED.

· The question at the end of the disclosure is a compliance requirement. You need to obtain verbal consent from the customer for enrollment. It needs to be very clear to the customer that they are receiving an enrollment packet, not information.

The following calls show that Clifford did not complete the enrollment and tell the customer they would be enrolled in Account Protector:
Contact ID 452234912333200000 2/17/2009, Contact ID 10235112708200101 2/20/2009, Contact ID 31235176258200101 2/20/2009,
Contact ID 668235191509200101 2/20/2009, Contact ID 169235194389200101 2/21/2009, Contact ID 726235527523200101 2/24/2009,
Contact ID 145235789355200101 2/27/2009, Contact ID 753235864612200101 2/28/2009.

The next group of calls are examples of instances where Clifford told the customerhe would send th einformation but does not disclose they would be enrolled at the same time: Contact ID 879235692875200101 2/17/2009, Contact ID 381235085848200101 2/19/2009,
Contact ID 458235092393200101 2/19/2009, Contact ID 458235092393200101 2/19/2009,  Contact ID 826235094709200101 2/19/2009,  ·
Contact ID 146235263367200101 2/21/2009, Contact ID 724235264662200101 2/21/2009, Contact ID 478234917948200101 2/26/2009.

Clifford accepted sales on these accounts when the cardholder clearly states they do not want to be enrolled. This is falsification of sales and manipulation of sales numbers. By not giving the customer the complete truth and putting the sale through as accepted, Clifford inflated his conversion rate for Cross Sell. This does not give an accurate conversion rate for Clifford's scorecard and incentive, and by manipulating the Cross Sell numbers, Clifford has increased his incentive payout for sales he has not done accurately. This behavior not only causes a monetary loss for Barclays, but also puts Barclays at risk because no customer authorization has been obtained.

As a result of the above conduct, Clifford Dorsey is being terminated effective immediately

Employee Signature (Required)                                          Date.

Manager Signature (Required)                                          Date

Department Head Signature (Required)

Human Resources Generalist (Required for Final/Termination)          Date.